UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SUPREME SECURITY SYSTEMS, INC.

              Plaintiff,

  -against-                                      REPORT AND
                                                    RECOMMENDATION
SUPREME SECURITY SERVICES, INC.,
ROBERT MANNING and GLENN CLAUSEN,            08 CV 2084 (JG) (RML)

              Defendants.
------------------------------------------------------------X

LEVY, United States Magistrate Judge:

By order dated March 22, 2010, the Honorable John Gleeson, United States District Judge, granted plaintiff's motion for a default judgement and enjoined defendants from using the trademarks, names, or logos "Supreme Security Services" and "Supreme Security Systems" in connection with the burglar, fire, and anti-intrusion alarm industry. On March 25, 2011, Judge Gleeson referred the case to me for a report and recommendation on the scope of damages, costs, and attorney's fees to be awarded. For the reasons stated below, I respectfully recommend that plaintiff be awarded $108,479.46 from defendants Supreme Security Services and Robert Manning.

**BACKGROUND AND FACTS**

The court assumes familiarity with the facts of this trademark action. Briefly, plaintiff Supreme Security Systems, Inc. ("plaintiff") commenced the action against Supreme Security Services and its principals and co-owners, Robert Manning ("Manning") and Glenn Clausen ("Clausen") (collectively, "defendants"), in May 2008. The basis of plaintiff's complaint was that defendants, in violation of plaintiff's trademark rights, used the mark SUPREME SECURITY SERVICES in connection with services for security alarm installation, maintenance

and repair.  (See generally Complaint, dated May 21, 2008 ("Compl.").)  Plaintiffs asserted claims against defendants for trademark infringement, unfair competition, federal false designation and passing off in violation of the Lanham Act, 15 U.S.C. § 1114(a) and § 1125(a), and trademark infringement and dilution under New York common law.  (See id. ¶¶ 39-63.)

By order dated March 22, 2010, Judge Gleeson granted plaintiff's motion for a default judgment and prohibited defendants from selling or advertising burglar, fire and anti-intrusion alarm services in connection with the name "Supreme Security Services" or "Supreme Security Systems."[1]  (See Order and Default Judgment Including Injunctive Relief, dated Mar. 22, 2010.)  On November 17, 2010, plaintiffs moved to enforce the judgment.  (See First Motion to Enforce Judgment, dated Nov. 17, 2010.)  Following a hearing, Judge Gleeson found all defendants in contempt of the court.  (See Order, dated Dec. 3, 2010.)  He ordered defendants to take down their website, turn over any advertising using the company name "Supreme Security Services," and turn over to plaintiff's counsel accounting information of Supreme Security Services's profits earned as of March 22, 2010.  (Id.)  On December 14, 2010, Judge Gleeson vacated the court's adjudication of contempt as to defendant John Clausen following the filing of an affidavit of compliance.[2]  By order dated March 25, 2011, Judge Gleeson referred the case to me for a report and recommendation on plaintiff's motion for damages, costs, and attorney's fees.

---

[1] Judge Gleeson further prohibited defendants from making any false statements or false representations likely to cause confusion or deceive the public into believing that defendants' services and products are associated with plaintiff's services and products, and ordered defendants to deliver to plaintiff all marketing materials bearing the infringing Supreme Security Services mark.  (Order and Default Judgment Including Injunctive Relief, dated Mar. 22, 2010.)

[2] Plaintiff and defendant Clausen subsequently stipulated to a settlement.  (See Stipulation Vacating Judgment Against Defendant Glenn Clausen Individually, dated Feb. 17, 2011.)

**DISCUSSION**

Plaintiff presently seeks damages arising from the use of the allegedly infringing trade name and mark, plus attorney's fees and costs. (See Memorandum of Law in Support of Request for an Award of Damages, Costs and Attorney's Fees, dated Mar. 18, 2011 ("Pls.' Mem."), at 3-5.) I will discuss each request in turn.

A. Damages

Plaintiff first seeks damages in the form of disgorged profits from defendant Supreme Security Services, in the amount of $100,135.88. (See Declaration of Steven Mancinelli, Esq., dated Mar. 18, 2011 ("Mancinelli Decl."), ¶¶ 11-13.) Section 35(a) of the Lanham Act entitles plaintiffs who establish a willful violation to recover defendant's profits. 15 U.S.C. § 1117(a). Plaintiff alleged that defendants' violation was willful in its complaint. (Compl. ¶¶ 37, 38.) It is well settled that, upon default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993). Defendants' wilfulness can be further inferred by their failure to appear in this matter. See Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co., 630 F. Supp. 2d 255, 261 (E.D.N.Y. 2008) ("A defendant's default may be considered as evidence of willful infringement"). I am persuaded that defendants' violations were willful.[3]

---

[3] The finding of willfulness is further supported by the fact that defendants continued to use the Supreme Security Services name and mark in connection with its alarm services business even after it received cease and desist letters from plaintiff's counsel (Compl. ¶ 32-38) and after a default judgment was entered. (See Order and Default Judgment Including Injunctive Relief, Mar. 22, 2010.)

Plaintiff seeks damages in the form of Supreme Security Service's profits from the date that judgment was entered, March 22, 2010, through December 8, 2010. (Mancinelli Decl. ¶ 11.) In assessing profits, the plaintiff is only required to prove defendant's sales. 15 U.S.C. § 1117(a). Defendants then bear the burden of proving all elements of costs or deductions claimed. Id. Damages under the Lanham Act are intended to be compensatory in nature, rather than punitive. Id.

In support of its damages application, plaintiff submits a profit-loss statement reflecting Supreme Security Services's gross profit and total expenses for the period of March 22, 2010 through December 8, 2010.[4] (See Mancinelli Decl., Ex. A.) The profit-loss statement indicates that defendant Supreme Security Services earned $316,483.87 in profits and had $309,435.14 in total expenses during that time period. (Id.) Plaintiff requests that the court disallow some categories of overhead and indirect expenses because they are reasonably related to services rendered under the infringing mark.[5] (Mancinelli Decl. ¶¶ 12-13.) In total, plaintiff requests the disallowance of $93,087.15 in expenses. (Id.) With these items excluded, defendant's net income for this period is $100,135.88. (Id.)

Courts apply a two-step process in determining deductions of overhead expenses from an infringer's profits. See Hamil Am. Inc. v. GFI, 193 F.3d 92, 105 (2d Cir. 1999) (citing Sheldon v. Metro–Goldwyn Pictures Corp., 106 F.2d 45 (2d Cir. 1939)). The first step is to

---

[4] Defendants produced this statement in compliance with Judge Gleeson's order. (See Order, dated Dec. 3, 2010, at 2.)

[5] Specifically, plaintiffs have requested the disallowance of the following line items from the profit-loss statement: automobile expenses ($39,401.81); bank service charges ($12,510.37); insurance ($2,607.36); medical expenses ($17,899.77); money orders ($387.53); consultants ($11,657.64); petty cash ($1,782.50); professional fees ($1,000.00); locksmith ($3,180.50); taxes ($1,471,60); travel and entertainment ($631.57); and uniform rental ($556.50).

"determine what overhead expense categories (such as rent, business, entertainment, personnel and public relations) are actually implicated by the production of the infringing product."[6] Id. Second, the court must determine a "fair, accurate, and practical method of allocating the implicated overhead to the infringement." Id. The infringer bears the burden of offering a formula for allocating specific portions of the overhead to the infringing items. Id. (citation omitted). This mode of analysis has been applied to orders to disgorge profits for violations of the Lanham Act. See, e.g., Fendi Adele S.R.L. v. Burlington Coat Factor Warehouse Corp., 642 F. Supp. 2d 276, 285 (S.D.N.Y. 2009).

In this case, as defendants have not responded to plaintiff's application for fees, they have made no arguments with respect to which of their expenses should be deducted. Therefore, defendants have not met their burden with respect to justifying expenses as deductions, and I recommend that the court disallow those expenses that plaintiff has identified as relating to defendant's infringing business.[7]

I therefore respectfully recommend that defendant Supreme Security Services be ordered to disgorge $100,135.88 in profits.

B. Attorney's Fees

---

[6] If a "sufficient nexus" is established between a category of overhead and the sale of an infringing product, courts need not scrutinize specific line items within the category of overhead. Hamil, 193 F. 3d at 105.

[7] The only category of disallowed expenses identified by plaintiffs that defendants could arguably use to reduce the profits they are required to disgorge is their income taxes. See In Design v. K-Mart Apparel Corp., 13 F.3d 559, 567 (2d Cir. 1994) ("Because the district court found K-Mart to be a nonwillful infringer, it should have allowed K-Mart a deduction for the taxes it paid on its innocently-acquired unlawful profits"). However, willful infringers are not entitled to disallow income taxes from a net profit calculation. See Fendi Adele S.R.L., 642 F. Supp. 2d at 281. As discussed above, defendants are willful infringers. Therefore, they would not be permitted to discount their net profits with income taxes.

Plaintiff also requests $7,800 in attorney's fees. Section 35(a) of the Lanham Act permits the court to award reasonable attorney's fees to the prevailing party in "exceptional cases." See 15 U.S.C. § 117(a). Exceptional cases in which the court has the discretion to award reasonable attorney's fees include those evidencing fraud, bad faith, or willful infringement. See Gordon and Breach Sci. Publishers S.A. v. Am. Inst. of Physics, 166 F.3d 438, 439 (2d Cir. 1999) (citing Twin Peaks Prods., Inc. v. Publications Int'l Ltd., 996 F.2d 1366, 1383 (2d Cir. 1993)); Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995). Defendants in this case were willful violators of the Lanham Act, and therefore an award of attorney's fees is appropriate. See Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc., No. 03-CV-2132, 2006 WL 728407, at *7 (S.D.N.Y. Mar. 21, 2006) (finding defendant's infringement willful and awarding attorney's fees under the Lanham Act).

Plaintiff seeks a total of $7,800 in fees, representing 24.10 hours of work. (See Mancinelli Decl. ¶ 15, Ex. B.) In calculating a "reasonable" fee award, the court must first establish a reasonable hourly rate, which is "the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 112 (2d Cir. 2007). "A district court's choice of rates is well within its discretion." Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 206 (E.D.N.Y. 2007) (internal quotations omitted); see also Meehan v. Gristede's Supermarkets, Inc., No. 95 CV 2104, 1997 WL 1097751, at *5 (E.D.N.Y. Sept. 25, 1997); Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994). Reasonable hourly rates are determined by reference to fees in the community in which the action is pending and to the skill and experience of the attorneys who worked on the matter. Luciano v. Olsten Corp., 109 F.3d 111, 115-16 (2d Cir. 1997). The party seeking fees then bears the burden of establishing that the number of hours for which it seeks compensation is

reasonable. Cruz, 34 F.3d at 1160 (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).

Here, I find plaintiff's counsel's hourly rates of $325 for attorneys to be reasonable and in line with rates awarded in this district to counsel with comparable experience.[8]  See, e.g., Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc., 04-CV-2293, 2009 WL 5185808, at *6 (E.D.N.Y. Dec. 23, 2009), aff'd, 409 Fed. Appx. 389 (2d Cir. 2010) (approving rates of $350-420 per hour for law firm partner with twenty-one years of experience in intellectual property law).

As for the reasonableness of hours expended, plaintiff has submitted contemporaneous time records in support of its request.  (See Mancinelli Decl., Ex. A.)  Plaintiff's attorney states that he expended a total of 24.10 hours on this case since March 22, 2010, the date of judgment.[9]  (Id.)  Having reviewed plaintiff's submission thoroughly, I am satisfied that the attorney did not engage in duplicative or unnecessary work.  Accordingly, I respectfully recommend that plaintiff receive a total fee award of $7,800.

C. Costs

Finally, plaintiff seeks costs in the amount of $543.58.  (See Mancinelli Decl. ¶ 14; Exs. B, C.)  A court will generally award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee paying clients."  Reichman v. Bonsignore, Brignati & Massotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987) (internal quotation marks and citation omitted).

---

[8] Plaintiff's counsel has practiced intellectual property law for 20 years. (See Mancinelli Decl. ¶ 15.)

[9] Counsel's work included discussions with defendants regarding the scope of the injunctive relief, drafting the motion papers to compel compliance with the injunction, and unsuccessful settlement discussions with defendants Clausen and Manning. (Mancinelli Decl., Ex. A.)

Here, the expenditures are for service of process and postage, as well as WestLaw research costs, in connection with this case. Such expenses are typically allowable,[10] and I find this to be a reasonable amount and what a fee-paying client would normally pay. I therefore respectfully recommend that plaintiffs be awarded $543.58 in costs.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiffs be awarded (a) $100,135.88 in disgorged profits; (b) $7,800 in attorney's fees; and, (c) $543.58 in costs.[11] In total, I recommend an award to plaintiffs of $108,479.46 from defendants Supreme Security Services and Robert Manning. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Gleeson and my chambers, within fourteen days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e). Plaintiff is directed to serve a copy of this Report and Recommendation on defendants.

Respectfully submitted,

ROBERT M. LEVY
United States Magistrate Judge

---

[10] See, e.g., Eu Yan Sang Int'l Ltd. v. S&M Enters. (U.S.A.) Enter. Corp., No. 09-CV-4235, 2010 WL 3824129, at *6 (E.D.N.Y. Sept. 8, 2010) (fees for postage and service of process permitted in a default judgment in a Lanham Act case); Gen. Motors Corp. v. Villa Marin Chevrolet, Inc., 240 F. Supp. 2d 182, 189 (E.D.N.Y. 2002) (computerized research fees reimbursed).

[11] Plaintiff has also requested "those costs taxable under a Bill of Costs and interest from the date of the Judgment." (Mancinelli Decl. ¶ 20.) However, plaintiff has submitted no documentation or further detail in support of this request. I therefore recommend that it be denied.

Dated: Brooklyn, New York
March 6, 2012